448 So.2d 705 (1984)
STATE of Louisiana
v.
Kerry Van WELCH.
No. 83 KA 0771.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Writ Denied May 25, 1984.
*707 Ossie Brown, Dist. Atty. by John Sinquefield, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
James Boren, Boren, Holthaus & Perez, Baton Rouge, for defendant-appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
Defendant, Kerry Van Welch, was indicted by the grand jury for the first degree murder of Marshall Carruth on April 16, 1977, in violation of LSA-R.S. 14:30. After trial by jury, defendant was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction alleging twelve assignments of error:
1. The trial court erred by overruling defense objection to the testimony that the victim had said he did not like to work with the defendant.
2. The trial court erred in denying a requested mistrial after testimony that the victim had said he did not like working with the defendant.
3. The trial court erred by refusing to admonish the jury after testimony that the victim had said he did not like working with the defendant.

*708 4. The trial court erred by not allowing the defense counsel to competently cross-examine prosecution witness Mr. Riddle.
5. The trial court erred by denying the defense request for a mistrial based on intentional prosecutorial jury information tactics.
6. The trial court erred by admitting into evidence a tire tool which could not possibly have been that tool allegedly involved in the instant case.
7. The trial court erred by failing to allow defense counsel to competently examine and/or cross-examine Eddie Bennett.
8. The trial court erred in denying the defense requested motion for appointment of a sanity commission.
9. The trial court erred in denying defense requested motion to suppress.
10. The trial court erred in denying the defense requested motion to exclude reference to prior convictions.
11. The trial court erred in denying the defense requested motion to quash and plea of unconstitutionality.
12. The trial court erred by failing to sustain the defendant's objection to the verdict as being a "qualified verdict".
Assignments of error numbers 8, 10, and 11 were neither briefed nor argued on appeal and are thus considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4; State v. Kohler, 434 So.2d 1110 (La. App. 1st Cir.1983).
On April 16, 1977, Marshall Carruth was found brutally murdered at the Baker Tire Center, his place of employment. That morning, the victim opened up the Baker Texaco Station as usual. About 7:00 a.m., he continued in his usual routine and proceeded to the tire center about a half mile away where he was to open up the center and fill the register with cash. Sometime around 8:00 a.m., a customer found the body of Carruth in the office. His head and face were horribly beaten and blood was splattered on the walls, floor and ceiling. The cash register was open and loose change was found on the floor. No suspects were arrested and the crime remained unsolved.
Sometime during the summer of 1980, defendant and Barbara Welch were married. Testimony in the record reveals that a few days after the marriage, defendant informed Barbara that he had killed a man. Because she thought Welch was just "talking big", Barbara did not pay much attention to the defendant's assertions. Sometime later, defendant and Barbara physically, but not legally, separated.
During the summer of 1982, defendant and Barbara were talking on the telephone when the subject of having killed a man recurred. Disturbed by this, Barbara Welch went to her father to ask advice. Barbara's father, Bud Kirouac, went to a friend, Charles Hicks, who worked as a pre-sentence investigator for the City Court of Baker. Hicks went to the Baker police with Barbara's information.
The Baker police asked Barbara if she would tape her telephone conversations with the defendant, and, if possible, get Welch to talk about the killing. Barbara consented to the request. In furtherance of the investigation, the police supplied her with a tape recorder and tapes which she could use to tape conversations with the defendant. Subsequently, on August 17 and 18 of 1982, two tapes were made of defendant talking with his wife on the phone. On the tape dated August 18, 1982, Welch admits killing Marshall Carruth and fears that because of this God will not forgive him and he will be condemned to hell.
On September 10, 1982, at about 6:00 a.m., the Baker police stopped defendant on his way to work and asked him to come down to the station for questioning about a matter under investigation. The defendant freely agreed. Upon arriving at the station, defendant was given his Miranda rights and signed a rights waiver form. When told by Baker police officers Bourgoyne and Funderburk that they had information that defendant was responsible for *709 the murder of Marshall Carruth, defendant initially denied involvement. Seconds later, however, after the police repeated their assertions, defendant put his head down, started crying and said something to the effect of, "You may as well take your gun and shoot me now because I'm not going to spend the rest of my life in prison."
Stan Easley is a Baker policeman, a born-again Christian, and a very religious man. Because he was initially assigned to the Carruth killing, those investigating the case have, out of courtesy, kept Easley informed as to the progress of the investigation through the years. When Easley heard the tape between defendant and Barbara, wherein defendant admitted killing Carruth and expressing fears about eternal damnation, Easley requested that he be allowed to talk to Welch after he was arrested about his religious suppositions and his fears that he would never be forgiven for the crime. Easley testified his motives were pure and he simply wanted to share Christ with Welch.
After the initial interrogation of defendant mentioned above, Bourgoyne and Funderburk left the room and Easley came in. Easley testified that when he entered the room Welch greet him with a "Hi". Immediately thereafter, Easley clearly identified himself as a policeman. Easley also testified that Welch knew who he was and knew he was a police officer from earlier encounters.
Defendant and Easley sat down together and had a prayer session which lasted several hours. During this session, defendant and Easley discussed the salvation of the Lord which is available to all Christians and the fact that Welch could be forgiven for the crime. The defendant, of course, made inculpatory statements to Easley about the crime.
After the prayer session, Welch made an oral confession to Officer Bourgoyne. Immediately thereafter, after having been given his Miranda rights again, defendant gave a taped confession wherein he admitted killing Carruth with a tire tool.
Sometime later in the morning, after having met with his wife, father-in-law, and minister, Welch apologized to his father-in-law for the crime and asked Officer Funderburk to gather up the Carruth family because Welch wanted to apologize to them. It is significant to note that subsequent to the confessions and inculpatory statements, defendant has never denied his involvement in this crime.
ASSIGNMENTS OF ERROR NUMBERS 1, 2 AND 3:
By these assignments, defendant contends the trial court erred by overruling defense counsel's objection to allegedly hearsay testimony, by denying a motion for mistrial after this testimony and refusing to admonish the jury after this testimony.
While on direct examination, Ruth Adams, the owner and manager of the Baker Tire Center, was asked by the prosecution if she knew whether the victim liked working with defendant. Defense counsel objected on the grounds that the question called for a hearsay response. The trial judge allowed her to answer the question. The witness responded, "No, he did not." She was then asked by the prosecutor, "And do you know why?" Defense counsel objected again, and the jury was retired. The trial judge asked the witness the same question. She answered that the victim had told her.
The trial judge ruled that the answer was hearsay and refused to allow the question. The judge, however, ruled the response to the first question was proper because the witness knew in her mind that the victim did not like to work with the defendant. The judge denied a motion for mistrial and refused to admonish the jury.
Hearsay evidence is testimony, in court or written evidence, of an out-of-court statement offered as an assertion to show the truth of matters asserted therein. State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983). The response to the first question was not an out-of-court statement and therefore does not constitute hearsay. We agree with the trial judge that the testimony was proper.
*710 The trial judge is given discretion to determine whether a fair trial is impossible, or an admonition is adequate, to assure a fair trial when prejudicial conduct does not fit within the mandatory mistrial provisions of La.C.Cr.P. art. 770. State v. Belgard, 410 So.2d 720 (La.1982). The trial judge correctly ruled that the witness' answer to the first question was admissible. Therefore, it was not error for the trial judge to refuse to grant a motion for mistrial or to give an admonition to the jury.
These assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER 4:
Defendant contends the trial court erred by not allowing impeachment of a prosecution witness through the use of an alleged prior inconsistent statement.
During his trial testimony, the witness stated defendant left the Texaco Station after the victim had left. In his statement on the day of the murder, the witness did not mention defendant left the station (there was some indications he was not asked the question). Defendant contends this is a prior contradictory statement.
LSA-R.S. 15:493 permits the credibility of a witness to be impeached by proof of any statement made contradictory to his testimony at trial. State v. Molinario, 383 So.2d 345 (La.1980). In this case, since the prior statement by the witness was not contradictory, it could not be used for impeachment. That statement did not contain facts inconsistent with the witness' testimony, rather it simply lacked information asked for at trial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 5:
Defendant contends that the trial court erred in denying his motion for mistrial based on the prosecutor's reference to defense tactics and the intent of defense counsel's objections. During cross-examination of a prosecution witness, the assistant district attorney objected to a question. Defense counsel objected to the prosecutor's comments and asked that the jury be retired. The prosecutor then commented that the jury should hear the argument and not be retired. The trial judge refused to grant a mistrial but did admonish the jury.
Mistrial is a drastic remedy, which is warranted only if substantial prejudice resulted which would deprive defendant of a fair trial, and the ruling of the trial court will not be disturbed absent an abuse of discretion. State v. Clay, supra. In this case, the judge properly admonished the jury to disregard the prosecutor's comments. Furthermore, there was no showing that the remark prejudiced defendant's right to a fair trial. We find no error in the denial of the mistrial.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 6:
Defendant contends the trial court erred by admitting into evidence a tire tool which was similar to the tool involved in this case. At trial, he argued that the evidence was not relevant. He now argues that the tool was not the best evidence, thus asserting an additional ground.
It is well settled that a new basis for an objection may not be raised for the first time on appeal. La.C.Cr.P. art. 841; State v. Burdgess, 434 So.2d 1062 (La. 1983). Therefore, we will not consider the best evidence ground for defendant's objection.
The trial court has great discretion in determining the relevancy of evidence, and its determination will not be overturned absent a clear abuse of discretion. The testimony was quite clear that the tool admitted into evidence was the same type tool that was found missing the day of the murder, and had remarkably similar characteristics as the instrument which the doctor testified probably struck the fatal blows. State v. Easley, 432 So.2d 910 (La.App. 1st Cir.1983). Thus, we find no abuse of discretion and, therefore, find no merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER 7:
Defendant contends that trial court erred by failing to allow him to impeach his own *711 witness. At trial, defense counsel pled surprise and claimed that his own witness was hostile.
The witness had been interviewed by defense counsel's investigator, and she stated she saw a long blond haired boy running away from the tire center shortly before the victim's body was discovered. On the morning of the trial, defense counsel discovered through his investigator that his witness was no longer clear on her recollection of the boy running away from the murder scene. The trial judge ruled the witness was not hostile and defendant was not surprised by the testimony when she did not admit seeing this boy.
No one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness shows hostility toward him. See, LSA-R.S. 15:487. Defendant makes no showing that the witness was hostile. A review of the record indicates she was cooperative and answered defense counsel's questions. Furthermore, defense counsel knew the witness was waivering on her testimony before he called her as a witness. We also find that the witness did not testify upon some material matter against the party introducing him and in favor of the other side. LSA-R.S. 15:488; See, State v. Rogers, 324 So.2d 403 (La. 1975). The witness simply was not testifying as defendant hoped she would.
Therefore, we find the trial judge correctly ruled it was improper for defendant to impeach his own witness.
ASSIGNMENT OF ERROR NUMBER 9:
In this assignment of error, defendant contends the trial judge erred in admitting several oral and taped statements by defendant. The four statements admitted were:
1. A taped confession dated September 10, 1982;
2. An oral statement to Sgt. Easley during their prayer session before the taped confession;
3. An oral statement to Officer Funderburk regarding an apology to the Carruths which occurred after the preceding identified statements; and
4. An oral statement to defendant's father-in-law which occurred at the police station after all of the above mentioned statements were taken.
Defendant contends that all the statements were inadmissible as they were fruits of the taped statements made by defendant to his wife. The trial judge ruled that the statements made to defendant's wife were inadmissible under the husband-wife privilege contained in LSA-R.S. 15:461. We note that defendant's wife did not testify in this case. We further note that Barbara Welch freely consented to tape the conversation between she and the defendant. Although defendant argues that Barbara's consent was coerced, we feel the preponderance of the evidence clearly demonstrates that Barbara's participation was voluntary. Thus, it was not unlawful for Barbara to tape her husband without his consent. LSA-R.S. 15:1303 B (3).
Suppression of evidence under the reasoning of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), requires a finding that discovery of the evidence is the direct result of some primary illegality or taint. State v. Johnson, 408 So.2d 1280 (La.1982). The taint is lacking in this case.
LSA-R.S. 15:461 creates two distinct husband-wife privileges regarding the competency of one spouse to testify against the other in a criminal proceeding. See, State v. Bennett, 357 So.2d 1136 (La. 1978). First, there is a privilege preventing the disclosure at trial of confidential communications made during the marriage by one spouse to the other. Second, there exists another distinct privilege preventing one spouse from being required to testify against the other during the marriage.[1]
*712 Since Barbara Welch did not testify, and since the taped conversations were not admitted at trial, there was simply no violation of LSA-R.S. 15:461, and defendant's argument that all fruits of the taped telephone conversations should have been suppressed is not grounded on any applicable statement of the law.
In this case, the taped conversations were privileged but not illegal. Therefore, no suppression of subsequent statements was required under Wong Sun.
Defendant also contends that the oral statement made to Sgt. Easley and the subsequent confession was subject to the priest-penitent privilege. In the only Louisiana case dealing with this privilege, State v. Berry, 324 So.2d 822 (La.1975), the Louisiana Supreme Court held the trial court did not err in finding the primary purpose of the minister's visit was not to seek spiritual advice or consolation. No case has dealt with the definition of clergyman within the meaning of LSA-R.S. 15:477, the statute creating the privilege.
Sgt. Easley was not a clergyman, and although he was a former deacon, he never was an ordained minister. Although the officer was a religious man and conducted a prayer session with defendant, we do not find that he was a clergyman under the statute. Therefore, the priest-penitent privilege did not apply and this statement was properly admitted. In any event, this statement was merely cumulative in light of our finding below that the taped confession was properly admitted.
Furthermore, defendant contends that the oral statements and taped conversation were involuntary and the result of a plan by police to play upon defendant's religious sensitivities.
In Louisiana the statutorily mandated test of voluntariness of a confession is whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451. Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, are involuntary and inadmissible as a matter of constitutional law. The State has the burden of affirmatively proving the confession was free and voluntary. Therefore, if the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the State to rebut these allegations specifically. State v. Odds, 430 So.2d 1269 (La.App. 1st Cir.1983).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980).
After a thorough review of the record, we conclude the trial judge did not err in ruling that the statements were voluntary. The record indicates that defendant was alert and did not appear to be under the influence of drugs or alcohol. Defendant was given his Miranda rights and signed a waiver form stating he understood and voluntarily waived those rights. Before giving his confession, he again stated he was voluntarily making the statement. The testimony of Detective Bourgoyne and Sgt. Easley indicates Sgt. Easley's purpose for speaking with defendant was to share Christ, not solicit a statement. We do not find any bad faith on the part of the officers in soliciting the confession. Sgt. Easley was not requested by the investigating officers to speak with defendant, and he did so only in the capacity as a private person. Furthermore, we find that defendant's statement to Officer Funderburk expressing a desire to apologize to the victim's family and Welch's apology to his father-in-law for committing the crime was properly admitted. It is apparent from the record that these statements were spontaneous and voluntary.
A close inspection of the record makes it quite clear in our minds that Kerry Welch was serious about finding forgiveness for the killing of Marshall Carruth. *713 His statements with reference to his participation in this crime were not the result of subterfuge, intimidation or pressure, rather they were motivated by a sincere attempt to "come clean" with the Lord and to find the forgiveness "coming clean" would bestow. We think the record is clear that the requirements of LSA-R.S. 15:451 and the jurisprudence have been met, and we find no abuse of discretion on the part of the trial judge in admitting the various statements.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 12:
Defendant contends that the trial court erred in failing to find that the verdict recommending mercy to the defendant was a "qualified verdict".
A recommendation of mercy is not considered as a qualification of the verdict, but is regarded only as surplusage. State v. Doucet, 177 La. 63, 147 So. 500 (1933).
Therefore, the trial court did not err in overruling defendant's objection to the verdict as a "qualified verdict".
This assignment of error is without merit.
Having found no merit to the assignments of error before this court, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] George W. Pugh, Louisiana Evidence Law (New York: The Bobbs-Merrill Company, Inc., 1974), p. 174.