518 So.2d 515 (1987)
STATE of Louisiana, Appellee,
v.
James David HEREFORD, II, Appellant.
No. CR87-42.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Smith & Wise, J. Wade Smith, Lake Charles, for defendant-appellant.
Saundra Isaac, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before FORET, LABORDE and KNOLL, JJ.
*516 FORET, Judge.
Defendant, James David Hereford, II, was indicted with the crime of second degree murder, a violation of La.R.S. 14:30.1. He pleaded not guilty to the charge. At trial, defendant testified on his own behalf claiming that he shot the victim and intended to shoot her, but that it was in self-defense. The jury found him guilty as charged, and defendant was subsequently sentenced to life imprisonment without benefit of suspension, probation, or parole. On appeal, defendant assigns seven assignments of error, three of which have been abandoned.[1]

FACTS
Defendant, James David Hereford, II, killed Margaret Gray Scott on May 20, 1986. The victim was shot eleven times with a 9 mm automatic pistol. Additionally, she had been struck about the face, neck, and head with a blunt metal instrument. The victim's body was found lying in a ditch by a farmer. Defendant was subsequently arrested in connection with this crime.

ASSIGNMENT OF ERROR NO. 2
Defendant claims the trial court erred in overruling his objection to the testimony of Daniel Dean, a self-ordained minister. Defendant alleges that the clergyman's privilege (La.R.S. 15:477) should have applied to Dean, who testified that he considered himself a minister.
La.R.S. 15:477 provides that:
"No clergyman is permitted, without the consent of the person making the communication, to disclose any communication made to him in confidence by one seeking his spiritual advice or consolation, or any information that he may have gotten by reasons of such communication."
We know of two cases in Louisiana in which the issue of the clergyman's privilege has been raised. The privilege was not allowed in either case. In State v. Berry, 324 So.2d 822 (La.1975), the defendant went to the apartment of a sister of a minister to pawn a watch. He asked to speak to the minister after he had been refused a loan by the minister's sister. He told the minister that he had taken the watch from a girl he had killed and needed $8 or he might hurt someone else. The court held the minister could testify as to this diclosure, finding that the purpose of the defendant's visit was to pawn a watch, not to seek spiritual advice or consolation. In State v. Welch, 448 So.2d 705 (La.App. 1 Cir.1984), writ denied, 450 So.2d 952 (La. 1984), Stan Easley, a policeman and "born-again" Christian, asked to speak to defendant to share Christ with him. Defendant had admitted killing the victim and had expressed fears of eternal damnation. Easley identified himself as a policeman to the defendant. Defendant and Easley had a prayer session which lasted several hours, during which defendant made inculpatory statements to Easley. The court held that the statements made to Easley would not fall under the priest-penitent privilege because the court found Easley not to be a clergyman under the statute.
In the instant case, Daniel Dean testified that he is a self-ordained minister, which he defines as a person who takes it upon himself to guide others in religious matters. He testified that he took a Bible study correspondence course from a college in California. While he was in the armed services, he was in a Bible study group at his church. Dean was incarcerated with the defendant at the time the statements were made. He was awaiting trial on burglary charges and, additionally, was a convicted felon, convicted of forgery in the 1970's. Although R.S. 15:477 does not define who is a "clergyman," Daniel Dean certainly does not appear to merit that respected professional designation.
Dean testified that he did not approach the defendant as a spiritual counselor, but that defendant simply asked him a question to initiate their conversation. Simply because Dean studied the Bible and took it upon himself to give religious guidance to others does not make him a clergyman. *517 Further, the testimony does not indicate that Dean was approached for spiritual counseling. Berry, supra and Welch, supra, are controlling in this situation. The trial court did not err in allowing Dean's testimony. Consequently, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
Defendant claims the trial court erred in allowing Anthony Hereford, defendant's step-brother, to testify that defendant had previously committed other crimes. Defendant argues that evidence that he had sold marijuana to the victim in the past should have been excluded as evidence of other crimes which did not fall within one of the exceptions to the admissibility of other crimes evidence. Defendant claims he is entitled to a reversal of his conviction because this evidence was improperly presented to the jury. The State argues that the testimony would have fallen within the motive exception. State v. LaFleur, 398 So.2d 1074 (La.1981).
The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant and, consequently, evidence of crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions. State v. Abercrombie, 375 So.2d 1170 (La.1979). Evidence of other crimes cannot be admitted unless the evidence is relevant for some purpose other than showing that the defendant is probably guilty because he is a man of criminal character. Id. Evidence of other crimes may be relevant to prove knowledge, intent, system, and motive. La.R.S. 15:445, 446; State v. Sutfield, 354 So.2d 1334 (La.1978).
In order to have independent relevance, the motive established by the other crimes must be a motive factually peculiar to the victim and the charged crime. Additionally, the evidence of other crimes must satisfy the following two tests: (1) there must be clear, convincing evidence that the defendant did indeed commit the other crimes, and (2) the probative value of the evidence must outweigh the risk of prejudice. Sutfield, supra, at 1337.
In Sutfield, the court held that evidence that defendant was a narcotics addict and thus needed money to support his addiction, was too general as a motive to commit armed robbery and was, therefore, inadmissible in a trial for armed robbery. In State v. Brown, 398 So.2d 1381 (La.1981), the court held evidence that the car which defendant was driving was stolen in an attempted murder trial was admissible. Defendant was stopped by a police officer for speeding. As the officer approached the vehicle, defendant fired at him with a shotgun. The court found that proof that defendant had stolen the vehicle established a motive for defendant to fire upon the officer. From Brown, it can be seen that evidence of other crimes does not have to be evidence of other crimes similar to the offense being tried to be admissible.
In the instant case, evidence was offered that defendant and the victim had met on previous occasions to conduct drug deals, whereas the instant offense was murder. The State's theory of the case was that defendant killed the victim to rob her. The evidence of the prior marijuana sales was relevant to show that defendant knew he would see the victim and knew she would be carrying a large amount of cash since he would be selling a pound or more of marijuana to her. This evidence is relevant to show a motive for the murder because, although defendant admitted he killed the victim, he claimed it was done in self-defense.
Defendant had told Anthony Hereford that he had sold drugs to the victim. The victim had indicated on the day of her death that she was meeting defendant to purchase marijuana. This appears to constitute clear and convincing evidence that the drug sales had taken place. In light of the claim of self-defense, the evidence was more probative than prejudicial. Thus, the elements for the admissibility of other crimes evidence were met. The trial judge did not err in allowing this evidence. Consequently, this assignment of error is without merit.

*518 ASSIGNMENT OF ERROR NO. 6
Defendant claims the trial court erred in allowing Charles Parker to testify after he had violated the rule of sequestration. Defendant contends that the State should not have been allowed to recall Parker to the stand after Parker had heard the testimony of two other State witnesses.
La.C.Cr.P. art. 764 provides that a court may exclude witnesses from the courtroom and order them to refrain from discussing the case with other witnesses. The purpose of sequestration is to ensure that a witness will testify as to his own knowledge to prevent witnesses from being influenced by testimony of earlier witnesses and to strengthen the role of cross-examination in developing the facts. State v. Narcisse, 426 So.2d 118 (La.1983), cert. den., 464 U.S. 865, 104 S.Ct. 515, 78 L.Ed. 2d 702 (1983). The trial judge, in his discretion, may determine the disqualification of a witness when a rule of sequestration has been violated. Id. A witness who has violated a sequestration order may still be allowed to testify if the purpose of the order has not been tainted or there is no evidence that the witness's testimony has been tainted. State v. Burge, 486 So.2d 855 (La.App. 1 Cir.1986), writ denied, 493 So.2d 1204 (La.1986).
In the instant case, Parker was recalled to testify that he had seen a tire tool in the back seat of defendant's car. After first testifying, Parker sat in the courtroom during the testimony of Tammy Henderson (defendant's girlfriend) and Carl Durale, which mentioned that the victim had been hit with a tire tool. Prior to trial, Parker had made a statement to police that he had seen a tire tool in defendant's car.
In light of the prior statement, the trial judge ruled that the witness's testimony was not tainted and would be allowed. It appears from the record that the trial judge did not abuse his discretion in allowing this testimony. State v. Kimble, 407 So.2d 693 (La.1981). Consequently, there is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 7
Defendant claims the trial court erred in sentencing him to an excessive sentence because life imprisonment constitutes cruel and unusual punishment, which violates his constitutional rights.
Defendant was convicted of second degree murder. The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. This is the sentence defendant received.
Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. State v. Graham, 422 So.2d 123 (La.1982); State v. Prestridge, 399 So.2d 564 (La. 1981).
Consequently, there was no error in sentencing defendant to a life sentence. This assignment of error lacks merit.
Defendant's conviction and sentence are therefore affirmed.
AFFIRMED.
NOTES
[1] Assignments of error numbers 1, 3 & 4 have been abandoned.