755 So.2d 297 (1999)
STATE of Louisiana, Plaintiff,
v.
Joseph Russell DUBROC, Defendant-Appellant.
No. 99-730.
Court of Appeal of Louisiana, Third Circuit.
December 15, 1999.
Rehearing Denied April 26, 2000.
*301 Bennett R. Lapoint, Michael C. Cassidy, Dist. Atty., Counsel for State of Louisiana.
Jennifer Stuller Nehrbass, Lafayette, Counsel for Joseph Russell Dubroc.
Before DOUCET, Chief Judge, AMY, and GREMILLION, Judges.
GREMILLION, Judge.
The defendant, Joseph Russell Dubroc, was indicted by a grand jury and convicted of attempted manslaughter and aggravated battery. Thereafter, the trial court sentenced Defendant to twelve years at hard labor for attempted manslaughter, three years at hard labor for aggravated battery, and ordered that the sentences be served consecutively, for a total term of imprisonment of fifteen years. Defendant appeals both his convictions and sentences, alleging nine assignments of error. For the following reasons, we affirm.

FACTS
The incident giving rise to the charges against Defendant occurred after his trailer was riddled with gunfire late in the evening of April 1, 1993. Observing the shooters flee in a Lincoln Continental, Defendant gave chase and, during the pursuit, exchanged gunfire with the occupants of the Lincoln. When the Lincoln finally stopped, Defendant discharged his shotgun into the car, injuring two of the occupants. Defendant claims the discharge of his shotgun was an accident and that his actions were an attempt to make a citizen's arrest.
Defendant lived in the rural community of Indian Village in Allen Parish. Along with his wife and youngest son, Defendant shared the trailer with his daughter, Monica, his oldest son, Joshua, Joshua's wife, and their baby. Earlier in the afternoon of April 1, 1993, Monica received threatening and harassing telephone calls from her ex-boyfriend, Brad Bromley, and his friends. During one of the calls, Bromley threatened to kill Monica and her entire family.
The record reveals that Bromley, Jason Walker, and Larry Tomasik, Jr. partied and consumed alcohol the entire day. Tomasik asked Karen King out for a date, and the group of Bromley, Walker, Tomasik, and King went to a local lounge to meet two other friends. The group of six were in a Lincoln Continental belonging to Tomasik's father. While driving toward the Dubroc trailer, they pulled off the road and took target practice with Bromley's handgun. According to King, when they arrived at the Dubroc trailer, she and Bromley got out of the Lincoln and approached the Dubroc trailer to retrieve some of his belongings. Suddenly, and without warning, Bromley opened fire on the Dubroc trailer. King testified that she did not know Bromley intended to shoot.
Inside the Dubroc trailer, Defendant and his family dove to the floor to avoid the spray of bullets. As Defendant opened the front door, a bullet shattered the door-frame. Defendant retrieved a gun, returning fire at the then unknown assailants. When he saw two people run to a car, which then sped away, he and Joshua pursued the car in separate vehicles. During the chase south from Indian Village to *302 just inside the Jefferson Davis Parish line, Bromley fired shots at Defendant and Joshua, shooting out Joshua's window. According to Bromley, he was returning the shots fired by the Dubrocs. When Bromley ran out of bullets, he threw his gun out of the passenger side window. Defendant ultimately forced the Lincoln off the road and into a ditch. After he and Joshua approached the Lincoln, Defendant ordered the occupants to throw out their guns. Defendant approached the driver's side of the Lincoln and hit Tomasik with the butt of his shotgun, knocking him unconscious. Defendant then fired into the vehicle hitting both Bromley and King. Bromley's wounds were not serious, but King suffered serious facial wounds which left her blind in her left eye and literally blew off her left jaw. There was testimony that indicated Defendant then went around to the passenger side of the car and opened the door allowing King to fall to the ground, at which time he threatened to kill her if Bromley did not exit the car. According to some of the witnesses, Defendant then shot King again at close range. Other witnesses, including Defendant, deny the second shooting. Further, King's treating physician could not tell from her wounds if she had been shot more than once. Defendant claimed he was attacked by two of the other occupants and that the only discharge of his shotgun was accidental. He asserted that he was only attempting to arrest the occupants for their armed attack upon his home and family.

ASSIGNMENTS OF ERROR
Defendant assigns as error the following:
1. The evidence was insufficient to support the conviction, especially when a Brady error was made.
2. The trial court erred in excluding from evidence a Marksman Repeater BB Handgun and two knives inventoried in the victims' vehicle for impeachment purposes prior to the State resting.
3. The trial court erred in excluding from evidence a Marksman Repeater BB Handgun and two knives inventoried in the victims' vehicle in the defense's case as relevant and material evidence, and/or for impeachment purposes.
4. The trial court erred in refusing to allow the defense to cross-examine the State's witnesses as to prior inconsistent statements which did not include certain facts testified to at trial.
5. The trial court erred in refusing to allow the defense to inquire into the circumstances surrounding the plea to reduced charges by the victim of the aggravated battery and by his co-defendant for the assault on the accused.
6. The trial court committed prejudicial error by admitting gruesome photographs, cumulative to the State's evidence, over objection, as well as allowing the victim to demonstrate her current disabilities to the jury when she was present with her physician to testify.
7. The impeachment of a witness, Monica Dubroc, on collateral issues not relevant to the issue of guilt or innocence was pretext by the State for corroborating their theory of the case in opening and closing statements.
8. The trial court erred in allowing extrinsic evidence for impeachment of a defense witness where he admitted making a prior inconsistent statement, especially where it was used substantively by the State in closing arguments.
9. Defendant's sentence was excessive.

ASSIGNMENT OF ERROR NUMBER ONE
In Defendant's first assignment of error, he claims that the evidence was insufficient to support the convictions. He devotes his *303 entire argument to the attempted manslaughter conviction, but does not argue that the evidence was insufficient to prove he committed an aggravated battery upon Tomasik, Jr.
Defendant also complains a Brady violation was made. When the defense requests evidence that is favorable and material to guilt or innocence, the State must produce it. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady rule applies to evidence tending to impeach the testimony of a witness whose credibility or reliability may be determinate of guilt or innocence. In the present case, the alleged Brady evidence was Tomasik's rap sheet. The State provided Defendant the rap sheet of Larry Tomasik, Sr., the father of the victim, and not the rap sheet of Larry Tomasik, Jr. Defendant did not object to the State's failure to provide the correct rap sheet, nor did trial counsel request a recess in order to obtain the proper information. For that reason, we shall not address this issue. State v. Stracener, 94-998 (La.App. 3 Cir. 3/1/95); 651 So.2d 463, writ denied, 97-0696 (La.11/7/97); 703 So.2d 1261.
Turning to the issue of sufficiency of the evidence, Defendant's key argument is that he fired only one shot and not two, as claimed by the State's witnesses. Regardless of the number of shots Defendant fired, we find that the evidence was sufficient to support a conviction for attempted manslaughter.
In order to obtain a conviction for attempted manslaughter, the State must prove beyond a reasonable doubt that the defendant possessed the specific intent to kill, a finding which is not necessary to support a manslaughter conviction. State v. Porter, 626 So.2d 476 (La.App. 3 Cir.1993); State v. Salone, 605 So.2d 229 (La.App. 2 Cir.1992). La.R.S. 14:10(1) defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." "Specific criminal intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant." State v. Maxie, 93-2158, p. 11 (La.4/10/95); 653 So.2d 526, 532. The law does not require that the intent to kill be of a specific victim, but only that the defendant had the intent to kill someone. State v. Hall, 606 So.2d 972 (La.App. 3 Cir.1992), writ denied, 93-0051 (La.11/11/94); 644 So.2d 385. Therefore, in the case sub judice, the prosecution had to prove from the circumstances that Defendant actively desired to commit a homicide, i.e., "the killing of a human being," and did or omitted an act tending directly toward the killing.
The testimony and evidence presented at trial, when viewed in the light most favorable to the prosecution, was sufficient to support the conviction of attempted manslaughter. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence was sufficient to infer from the circumstances that Defendant intended to kill an occupant of the Lincoln. Defendant admits that his shotgun discharged inside the occupied car, but he claims that it did so accidentally or his action was justified as part of a lawful citizen's arrest. La.Code Crim.P. art. 214, et seq. However, while there was evidence supporting Defendant's claim of accident and justification, there was also evidence refuting his claim. The jury obviously believed the latter evidence and rejected Defendant's claim.
Additionally, the jury could have reasonably concluded that Defendant deliberately aimed his shotgun toward the car's occupants with an intent to kill. In State v. Coleman, 432 So.2d 323 (La.App. 1 Cir. 1983), the court affirmed a conviction for attempted manslaughter. In that case, the defendant was walking with three friends when a car with four youths passed by and the two groups exchanged words. The defendant drew a gun and fired six shots *304 at the car; three of the shots struck the vehicle and one of the three struck the victim. Based on these facts, the court found that "the jury could conclude that defendant deliberately aimed toward the car's occupants with an intent to kill." Id. at 325. In State v. LeBlanc, 97-1388 (La. App. 4 Cir. 9/23/98); 719 So.2d 592, the defendant, a murder suspect, fired four to six shots at three occupants of a police car, who were looking for him. The evidence presented was sufficient for a rational trier of fact to conclude that the defendant had the specific intent to kill; that is, when the defendant fired his gun at one of the occupants from a distance of fifteen to twenty feet away, he intended the natural consequences of his actions, i.e., striking the man with a bullet or bullets and killing him.
Accordingly, we find that this assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
We will combine the discussion of these two assignments of error since they are nearly indistinguishable. Defendant claims that the trial court erred by excluding from evidence two knives and a handgun, which he attempted to offer for impeachment purposes. These items were found inside the Lincoln after the police conducted an inventory search. The State took the position that Defendant was dealing with unarmed occupants when he stuck his shotgun inside the Lincoln. Defendant attempted to refute this characterization by showing that there were two knives and a Marksman Repeater handgun (pellet gun) inside the Lincoln. The State objected on the grounds of relevancy since the occupants testified that they were unaware of any other weapons inside the car.
Initially, we note that Deputy Robert Finley, who performed the crime scene investigation and inventory search of the Lincoln, testified about the knife found in the Lincoln. A photograph showing the handle of the knife sticking out from between the front seat cushions of the Lincoln was introduced into evidence. Defendant was allowed to ask the deputy about finding the knife and the jury was informed that another weapon was located in the Lincoln. The trial court refused to allow Defendant to introduce the knife itself into evidence. Thus, the jury was informed about the presence of one knife.
Defendant attempted to have the State stipulate that there were two knives and an air pellet or BB handgun inside the Lincoln, but the State objected to such a stipulation claiming the items were not relevant. The State argued that none of the occupants of the Lincoln knew these weapons were inside the vehicle, but, rather, the weapons were discovered by Deputy Finley during his inventory search of the vehicle. The trial court found the items not relevant for credibility purposes, but allowed Defendant the opportunity to lay a foundation for their introduction into evidence during his case-in-chief. Defendant failed to do so.
The trial court did not err in its ruling. The State refused to stipulate to the fact that these items were inside the Lincoln because no one in the vehicle knew they were present until the day after the shootings. The gun and knives are extrinsic evidence. Defendant may attack the credibility of a witness by the introduction of extrinsic evidence unless the trial court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risk of undue consumption of time, confusion of the issues, or unfair prejudice. La.Code Evid. art. 607(D)(2). The introduction of evidence that none of the vehicle's occupants knew about would clearly risk the undue consumption of time, confusion of the issues, and unfair prejudice. Further, Defendant was not prevented from laying a proper foundation for admitting these weapons during his case-in-chief, but chose not to do so.
*305 We find no error in the trial court's ruling, therefore, these two assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, Defendant claims the trial court erred in refusing to allow him to cross-examine Bromley as to a prior inconsistent statement. Defendant attempted to impeach Bromley with his original statement to the police, wherein he explained what occurred on the night in question, but never related that Defendant shot King a second time. At trial, Bromley testified that Defendant shot King first while she was in the Lincoln and then again while she was lying on the ground. Defendant contended that the description of the shootings were inconsistent, thus, he had a right to impeach Bromley with his original statement to the police.
The State argued that since Bromley was not asked specifically in his original statement how many times Defendant shot King, there was no inconsistent statement. The trial court relied upon State v. Welch, 448 So.2d 705 (La.App. 1 Cir.), writ denied, 450 So.2d 952 (La.1984), to find that the first statement was neither contradictory nor inconsistent simply because it failed to include certain facts.
In Welch, the defendant was charged with murdering a co-worker. A witness testified that he saw the defendant leave the store shortly after the victim, even though he made no mention of this fact in his initial statement to the police. This fact was not pivotal in Welch because the defendant never denied killing the victim, but rested his case upon being induced to give involuntary confessions. The trial court in Welch refused to allow the defense to impeach the witness simply because the first statement omitted this fact. On appeal, the court stated, "In this case, since the prior statement by the witness was not contradictory, it could not be used for impeachment. That statement did not contain facts inconsistent with the witness' testimony, rather it simply lacked information asked for at trial." Id. at 710. We find the trial court's reliance on Welch misplaced. In the recent case of State v. Richards, 99-0067, p. 2 (La.9/17/99); 750 So.2d 940, 941, the supreme court permitted an accused to be impeached by his "previous failure to state a fact in circumstances in which that fact naturally would have been asserted." In this case, whether Defendant shot King one or two times was a key issue for the defense. The trial court should have allowed Defendant to impeach Bromley with the statement. It was not simply an omission for Bromley to fail to tell the investigating officers the day after the shootings that Defendant shot King a second time while she lie wounded on the ground. If the State is allowed to make substantive use of a witness' silence or failure to state a fact, Defendant should be allowed to impeach the witness for failing to state a fact that naturally should have been asserted.
Nevertheless, we find that the trial court's failure to allow Defendant to impeach Bromley with the use of the statement is harmless error. In our opinion, whether Defendant shot King once or twice would not have changed the jury's eventual determination that he acted with the specific intent to kill. As was noted in the first assignment of error, Defendant's overt action of angrily pointing and firing a loaded shotgun into a vehicle occupied by six persons, when viewed in the light most favorable to the prosecution, was sufficient to prove that he acted with specific intent to kill or cause great bodily harm and, thus, was guilty of attempted manslaughter. In other words, even if Defendant had been allowed to impeach Bromley, it would not have changed the verdicts.[1] Furthermore, Bromley had already been impeached on another issue, thus, his believability *306 or credibility before the jury had already been questioned.
Although we find the trial court committed error in not allowing Bromley's prior statement to be used for impeachment purposes, we, nonetheless, find the error to be harmless when viewed in light of the remaining evidence.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, Defendant complains that he should have been permitted to inquire into plea bargain agreements entered into by other occupants of the Lincoln in the Thirty-Third Judicial District Court. The Allen Parish District Attorney originally charged the occupants with conspiracy to commit first degree murder of the Dubroc family, but the charges were reduced as a result of a plea bargain.
In resolving this issue, we look to La. Code Evid. art. 609.1(C), which reads:
Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
In the present case, the trial court found that none of the three exceptions permitting the admission of details of prior convictions arose. After a review of the record, we find no abuse of discretion in its ruling and, as such, find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER SIX
This assignment of error raises two issues: the admissibility of gruesome photographs and the demonstration by King of the scars from her gunshot wound. The State initially offered to introduce into evidence four color photographs of King that were taken by one of the surgeons prior to her emergency surgery. Defendant objected to the introduction of these photographs as cumulative, arguing that both Dr. Spears, the cardiovascular and thoracic surgeon who performed the surgery, and King would testify. Defendant also questioned the accuracy of the photos since they were taken after emergency room personnel had prepared King for surgery. Further, Defendant argued that the photographs were "clearly an effort by the prosecution to inflame the passion of the jury." After the trial court indicated that it thought two of the photographs were cumulative, the State withdrew those two photographs. At that point, the trial court admitted the other two photographs into evidence. Even though Defendant did not object to this ruling, we find that he made known to the court the action which he desired the trial court to take and the grounds for the objection. La.Code Crim.P. art. 841 A. Therefore, we shall consider the objection.
The photographs were taken shortly before King went into surgery and graphically depict the wounds to her face. Even though Dr. Spears testified at length concerning the injuries King sustained, we find that the photographs show in much more detail the seriousness of the wound. For that reason, we hold that the photographs accurately show the extent of the wounds and are not cumulative.
We next consider whether the photographs inflamed the passion of the jury. Photographs, as with other evidence, may be excluded if their probative value are substantially outweighed by the danger of unfair prejudice. La.Code Evid. art. 403.

*307 Photographs are generally admissible if they illustrate any fact, shed light upon any issue in the case, or serve to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Perow, 616 So.2d 1336 (La.App. 2d Cir.), writ denied, 623 So.2d 1303 (La. 1993).
The test for admissibility of gruesome photographs is whether their probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807, reh'g denied, 489 U.S. 1061, 109 S.Ct. 1332, 103 L.Ed.2d 600 (1989). Photographs of a victim's body depicting fatal wounds are generally relevant in proving corpus delicti; establishing the victim's identity and the location, severity, and number of wounds; and corroborating other evidence of the manner in which the death occurred. State v. Eaton, supra.

The trial court has great discretion in admitting photographs into evidence. Absent an abuse of that discretion, the ruling will not be disturbed. State v. Perow, supra.

State v. Jasper, 28,187, p. 10 (La.App. 2 Cir. 6/26/96); 677 So.2d 553, 562, writ denied, 96-1897 (La.2/21/97); 688 So.2d 521.
The State offered the evidence in an attempt to show that King was shot twice. There was conflicting evidence on this issue with some witnesses claiming she was shot only once by Defendant and others testifying that she was shot twice. Considering the great discretion vested in the trial court in admitting photographs, as well as the corroborating effect the photographs may have in establishing the location and severity of the wound, we cannot say that the trial court erred.
Defendant also objected when the State asked that King be allowed to step down from the witness box and show her wounds to the jury. Defendant's objection was based upon three grounds: an appeal to passion and sympathy; relevancy to the issue of Defendant's guilt; and it was unnecessary since the photographs and medical testimony concerning King's wounds had already been admitted. Article 403 of the Louisiana Code of Evidence is controlling on this issue. If the probative value of the demonstration outweighs the prejudicial effect, the demonstration is permissible. Here, as with photographs, the trial court has great discretion. We find that the trial court did not abuse its discretion in allowing the display of King's wounds to the jury. The demonstration was not so inflammatory that its prejudicial effect outweighed its probative value; that is to show the extent of the injury inflicted upon her, particularly when viewed in light of the fact the jury obviously saw her during her testimony. See State v. Robinson, 563 So.2d 477 (La.App. 1 Cir.), writ denied, 567 So.2d 1122 (La.1990); State v. Bradford, 298 So.2d 781 (La.1974), appeal dismissed, 420 U.S. 915, 95 S.Ct. 1109, 43 L.Ed.2d 387 (1975).
Thus, this assignment of error is rejected as meritless.

ASSIGNMENT OF ERROR NUMBER SEVEN
By this assignment of error, Defendant claims that the State improperly called Monica Dubroc, now Monica Zigler, as its second witness in order to impeach her credibility on collateral issues unrelated to his guilt or innocence, and then used the information as substantive evidence against him. The State denies these allegations and further contends that Defendant failed to object at trial.
Monica lived with Bromley during March 1993, but returned to live with her parents shortly before the incident in question. According to Monica, Bromley made threatening and harassing telephone calls to the Dubroc home between 7:00 and 9:00 p.m. on April 1, 1993. She testified that she could tell during the calls that he *308 was intoxicated. He demanded that she return to him and, when she refused, he threatened to kill her. When Bromley threatened to come to her father's trailer "to get her," Monica claimed that she was not scared since he had threatened her before without carrying out his threats. At one point, Defendant spoke to Bromley and told him to stop calling. According to Monica, Defendant did not use any harsh words toward Bromley at that time, and the two men had never had any problems or disagreements before this incident.
The State's impeachment of Monica began when she replied that she did not know that Bromley had a gun. The State read portions of her statement given to police on April 5, 1993, that related to other facts leading up to the shootings, before reading the specific question and answer relating to whether she knew Bromley had a gun.
Before a witness' credibility may be attacked, "La.Code Evid. art. 613 requires that the witness's attention to be called to the inconsistency and the witness be given the opportunity to acknowledge the prior statement, but fail to do so." State v. King, 96-1303, p. 13 (La.App. 3 Cir. 4/2/97); 692 So.2d 1296, 1303. Failure to recall a statement constitutes a failure to distinctly admit having made it. State v. Stanfield, 562 So.2d 969 (La.App. 3 Cir.), writ denied, 567 So.2d 609 (La.1990). Although a prior inconsistent statement is admissible for impeachment purposes, the Louisiana Supreme Court has steadfastly held that the admission of a prior inconsistent statement incriminating the defendant is admissible only on the issue of credibility of the witness and not as substantive evidence of the defendant's guilt. State v. Cousin, 96-2973 (La.4/14/98); 710 So.2d 1065.
Defendant objected to the State's impeachment procedure, but did not object to the State's use of impeachment to introduce inadmissible testimony of his guilt. The State questioned Monica as to whether Bromley had a gun and she responded that he did not. At that point, the State began reading the portion of her April 5, 1993 statement where she answered, "No, he just said he was going over there and beat my dad's ass is all he said." After that the following occurred:
STATE: Do you see the question where it says: "All right. He didn't tell you he was coming over and shoot the damn place up?" Do you see that Question?
ZIGLER: Yes, Sir.
STATE: Do you see your answer to that question immediately thereafter?
ZIGLER: Yes, sir.
STATE: Would you please read that questionthat answer that you gave on that occasion.
ZIGLER: "No. The only thing he told me he had a gun, but I didn't believe him because he told me before he had a gun. But he'she's never done anything like that before, so I didn't really believe him. I just passed it off."
STATE: And the next question: "So, in fact, he did tell you he had a gun?" And what is your answer to that question?
ZIGLER: Yes.
STATE: I'm sorry?
ZIGLER: Yes.
STATE: Okay. The next question: "Did you tell your father"
At this point, Defendant interposed an objection, but the objection went to the impeachment procedure and the particular questions and answers being read. As stated above, the objecting party must make known the action he/she desires the trial court to take at the time an action by the trial court is sought. La. Code Crim.P. art. 841. To preserve an error for appeal, Defendant must state the basis for the objection, point out the specific error to the trial court, and the grounds for the objection must be sufficiently brought to the trial court's attention *309 so as to allow it the opportunity to make the proper ruling and prevent or cure any error. State v. Trahan, 93-1116 (La.App. 1 Cir. 5/20/94); 637 So.2d 694. In this case, Defendant did not state the correct basis for the objection nor point out the specific error to the trial court. His objection went to the procedure used by the State, albeit a proper objection, but he did not object to the use of impeachment evidence going to the issue of guilt or innocence nor did he request an admonition. Therefore, Defendant waived his right to appeal that issue.
Accordingly, for the reasons set forth above, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER EIGHT
By this assignment of error, Defendant contends that the State improperly used the impeachment evidence during its closing argument. Since Defendant failed to make a contemporaneous objection during closing arguments, any claim concerning the closing arguments cannot be considered on appeal. La.Code Crim.P. art. 841.
However, Defendant did timely object to certain impeachment testimony of Joshua. According to his testimony, Joshua joined his father in the pursuit of the Lincoln. After the police arrived at the scene, Joshua gave a statement to Detective Kenneth Guidry. During its direct examination, the State asked Joshua if he saw someone jump on his father's back. Joshua finally admitted that he did not. Subsequently, the State questioned Joshua concerning the statement he gave Detective Guidry wherein he told the detective that some guy tried to jump his dad. Joshua admitted that his testimony differed from his statement by explaining that he was confused because everything happened so fast on the night in question.
After Joshua testified, the State called Detective Guidry as a witness, and informed the court, "Basically, the only reason I'm calling him is to impeach this guy who just was called." Detective Guidry was asked to summarize the facts of the shooting given by Joshua in his April 2, 1993 statement. When Defendant objected to this testimony on the grounds of hearsay, the trial court overruled the objection. Detective Guidry then gave a summary of Joshua's statement, but could not remember all the details. The State then attempted to have Detective Guidry read some of Joshua's statement to the jury, but the trial court sustained Defendant's objection and noted that the witness could not read another witness' statement to the jury.
In State v. Nedd, 93-1906, pp. 6-7 (La.App. 1 Cir. 11/10/94); 647 So.2d 346, 349-50 (footnote omitted), our colleagues, when faced with a similar situation, stated:
Evidence of a witness's prior inconsistent statement is admissible when offered to attack the witness's credibility, unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. LSA-C.E. art. 607 D(2). A prior inconsistent statement by a witness may be considered for impeachment purposes only, and not as substantive evidence of a defendant's guilt (unless the statement otherwise qualifies for admission as non-hearsay or fits within an exception to the hearsay rule). State v. Robertson, 615 So.2d 1036, 1039 (La.App. 1st Cir.), writ denied, 619 So.2d 1062 (La.1993). See G. Pugh, et al., Handbook on Louisiana Evidence Law, authors' note 11 to LSA-C.E. art. 607 (1994 ed.).
A witness may be confronted with his own prior statement which is inconsistent with his current testimony when the proper foundation required by LSA-C.E. art. 613 has been laid. Williams v. United Fire and Casualty Company, 594 So.2d 455, 462 (La.App. 1st Cir. *310 1991). The witness's attention must be "fairly directed" to the statement, and the witness must be given the opportunity to admit the "fact" of the statement. Extrinsic evidence of the prior contradictory statement is admissible only if the witness denies making the particular statement. LSA-C.E. art. 613. See State v. Johnson, 595 So.2d 789, 796 (La.App. 2nd Cir.1992). See also G. Pugh, et al., Handbook on Louisiana Evidence Law, authors' note 2 to LSA-C.E. art. 613 (1994 ed.).
Accordingly, a prior inconsistent statement will not be automatically admissible even though the witness admits the statement is inconsistent with his testimony. State v. Jarvis, 97-1174 (La.App. 5 Cir. 4/9/98); 710 So.2d 831, writ denied, 98-2219 (La.1/8/99); 734 So.2d 1222. Because Joshua admitted making the inconsistent statements, extrinsic evidence of the prior statements was inadmissible, and the trial court erred when it allowed the State to present to the jury portions of Joshua's statement during both Joshua's and Detective Guidry's testimony. See Nedd, 647 So.2d 346, and cases cited therein.
Although the trial court erred in allowing the State to introduce Joshua's statement, we find the error is harmless. "In determining whether erroneous admission of evidence requires reversal of a defendant's conviction, the proper standard is whether there is a reasonable possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not." State v. Romero, 574 So.2d 330, 335 (La. 1990). To say that an error did not contribute to a verdict is to find the error unimportant in relation to everything else the factfinder considered on the issue in question as revealed in the record. Here, the record reflects that the jury already knew that there had been a prior inconsistent statement because Joshua admitted as such during his testimony. Thus, the testimony of Detective Guidry was cumulative. Further, in his testimony, Detective Guidry never stated that Joshua said in his statement that someone jumped on his father's back on the night of the incident. Finally, Defendant never requested that the trial court give a limiting jury instruction concerning the proper use of the evidence at the time the impeachment occurred.
Therefore, the error by the trial court was harmless and this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER NINE
In his final assignment of error, Defendant contends that the sentences imposed by the trial court are excessive. The trial court sentenced the Defendant to twelve years at hard labor for attempted manslaughter and three years at hard labor for aggravated battery. The trial court further ordered the sentences to be served consecutively for a total term of imprisonment of fifteen years.
Defendant had no prior misdemeanor or felony convictions, nor did he have a record of any arrests for any criminal conduct. He was forty-five years old, married, a father and grandfather, and he had always been gainfully employed. The trial court considered his lack of any criminal history, the hardship that would be incurred by his family from any incarceration, and his stable background as mitigating factors.
As for aggravating factors, the trial court found that Defendant's crimes were crimes of violence, committed with a firearm, and caused serious, life-threatening injuries with permanent disfigurement and disabilities for King. King still faces more reconstructive surgeries, and she lost one eye and is legally blind because a shotgun pellet remains lodged in her other eye. The trial court noted that Defendant would return to his normal activities after serving his term of imprisonment, but that King would still suffer from the wounds he inflicted upon her. The trial court further *311 noted that Defendant could have received a maximum sentence of thirty years but that he only received a sentence of half that amount.[2]
The relevant question on review of a sentence is whether the trial court abused its broad sentencing discretion and not whether the sentence imposed may appear harsh or whether another sentence might be more appropriate. State v. Cook, 95-2784 (La.5/31/96); 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). To constitute an excessive sentence, this court must find the penalty imposed is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals; and, therefore, it is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981). The trial court is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Pyke, 95-919 (La. App. 3 Cir. 3/6/96); 670 So.2d 713.
While the sentence imposed may appear harsh, it is not so disproportionate to the severity of the crime that it shocks our sense of justice and, therefore, is not unconstitutionally excessive. Likewise, we find that this assignment of error is without merit.

CONCLUSION
The evidence presented was sufficient to support Defendant's conviction for attempted manslaughter and aggravated battery, and the sentences are not unconstitutionally excessive. Thus, Defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We note that King testified that she had been shot twice.
[2] Pursuant to La.R.S. 14:27, 14:31, the maximum sentence for attempted manslaughter was not more than twenty years imprisonment. The maximum sentence for aggravated battery was ten years imprisonment with or without hard labor. La.R.S. 14:34.