STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

08-99

STATE OF LOUISIANA

VERSUS

RANDALL C. CURTIS

**********
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-460-2005
HONORABLE STUART S. KAY,  JR., DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and James T. Genovese, Judges.

**Genovese, J., concurs in part, dissents in part, and assigns written reasons.**

AFFIRMED IN PART; SENTENCE REDUCED;
AND RENDERED IN COUNT ONE.

**David W. Burton**
**District Attorney - 36th JDC**
**Richard F. Blankenship**
**Assistant District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**Counsel for Appellee:**
      **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
      **Randall C. Curtis**

GREMILLION, Judge.

The defendant, Randall C. Curtis, was found guilty by a jury of one count of attempted molestation of a juvenile in violation of La.R.S. 14:27 and 14:81.2, two counts of molestation of a juvenile in violation of La.R.S. 14:81.2, and two counts of carnal knowledge of a juvenile in violation of La.R.S. 14:80. He was sentenced as follows: 1) count one, attempted molestation of a juvenile, ten years at hard labor; 2) count two, molestation of a juvenile, fifteen years at hard labor; 3) count three, carnal knowledge of a juvenile, ten years at hard labor; 4) count four, carnal knowledge of a juvenile, ten years at hard labor; and 5) count five, molestation of a juvenile, fifteen years at hard labor. The sentences on counts one through four were ordered to run concurrently, while the sentence on count five was ordered to run consecutively to the other four counts. Additionally, all of the sentences were ordered to run consecutively to any previous sentence Defendant was subject to, and he was given credit for time served.

Defendant is now before this court asserting that the evidence introduced at trial was insufficient to prove the elements of counts one and two and that his sentences are excessive. We affirm Defendant's convictions on counts one and two and the sentences on counts two, three, four, and five. Further, we hold that his sentences are not excessive. However, his sentence on count one is reduced to seven and one-half years at hard labor and rendered.

**SUFFICIENCY OF EVIDENCE**

In his fifth assignment of error, Defendant argues that the evidence introduced at trial was insufficient to prove the necessary elements of attempted

1

molestation (count one) and molestation of a juvenile (count two).  We will address this assignment of error first in the event that a reversal is warranted.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981).  It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review.  *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)).  In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of molestation of a juvenile are set forth in La.R.S. 14:81.2(A), which reads, in pertinent part:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

Defendant argues that the State failed to prove beyond a reasonable doubt that the acts were conducted for the purpose of arousing or gratifying the sexual desires of either party.  He further claims that the State failed to prove that he had the specific

2

intent to touch the genitals and breast of the victim or that the acts occurred because he was using his position of control or supervision over the victim.

There is no dispute that the victim was under the age of seventeen, that Defendant was over the age of seventeen, and that there was a difference of more than two years in their ages. He specifically disputes whether the acts set forth in the amended bill of information occurred and, if so, whether they occurred during the period of time that he was exercising supervision and control over the victim. Lastly, Defendant avers that the State failed to prove that the acts were committed to gratify the sexual desires of either party.

At trial, the victim's mother, K.V.,[1] testified that she needed assistance in her home with her children and that she requested Defendant's help. She explained that the children needed a positive role model and that they needed to know that all men were not bad. According to K.V., she had just exited a bad relationship wherein she had been psychologically and verbally abused and that her children were also suffering as a result of same. She testified about a meeting between herself, Defendant, and her mother regarding the troubles that her children were having and stated that they set forth guidelines, including punishment, rewards, and expectations, to help the children. K.V. stated that she gave Defendant permission to discipline her children and that he was in a position of control over them. She thought, however, that this authority would be shared, but she felt as though she had relinquished most of the control.

---

[1] Pursuant to La.R.S. 46:1844(W), the use of initials are used to protect the identity of the juvenile victim of a sex crime.

The victim, who was fourteen years old at the time of the offenses, also testified that her mother had given Defendant the authority to discipline them and that he exercised that authority during the time he resided with them. One day during his stay, Defendant punished the victim because he thought she had stolen money. According to the victim, the punishment entailed taking her to his mother's house to work. She said that when they arrived, however, they did not work as planned. Instead, she stated that Defendant asked her if she was interested in learning about a religion referred to as Shamanism. The victim said that she replied affirmatively as she was genuinely interested in learning about the religion. The two proceeded to walk to the woods behind his mother's property. They stopped at a cleared area, where Defendant asked her to undress. The victim testified that although she was uncomfortable, she complied and removed all of her clothes, sat down, and curled her knees up to her chest. The victim said that Defendant next asked her to sit cross-legged. She complied once more and then Defendant proceeded to undress and sit down across from her, but within arm's reach.

As they began to talk about Shamanism, the victim became uncomfortable when Defendant asked her to look at his genitals and to touch them. She could not recall with certainty if she touched his genitals. She did recall, however, that he touched her inner thigh and tried to touch her vaginal area. According to the victim, Defendant did not succeed because she avoided his advance by scooting back. The victim testified that he told her she should not be uncomfortable because he was just trying to teach her about Shamanism. She said that she believed him at that time because she wanted something to believe in,

4

explaining that she felt like a misfit. Defendant told her that Shamanism might help her believe in herself, and she thought it was something that would help them both feel better about the world. That day, he made no other attempts to touch her or to encourage her to touch him. They dressed, talked a little more, and then the victim wanted to go home. She testified that Defendant did not threaten her at that time.

According to the victim, Defendant began asking for more sexual activity after their first encounter. One day while at her home, Defendant wanted to have intercourse with her, referring to the act as "Giving back to the Great Spirit." She testified that they got into an argument because she did not want to have sex with him. Defendant insisted that she could not put it off anymore. As instructed, she undressed, laid back on the bed, and "took it," (had sexual intercourse with Defendant). Prior to that time, the two had tried to have intercourse, but it was painful for her, and she had asked him to stop. The victim testified that they began having intercourse about a month after Defendant moved into their home, and they continued to have intercourse while he lived there and after he moved out.

Next, the victim testified that Defendant taught her how to "jack him off" or masturbate him. According to the victim, this occurred "quite often" during the months he lived in her home. Defendant also taught the victim how to "give head" or perform oral sex on him. She explained that he took her into the computer room of their home when her mother was not home and pulled up pornography from a web site and instructed her to do what they were doing. She said that she complied at that time and ended up performing oral sex on the Defendant "often." Her testimony was supported by the fact that one of the computers seized during the investigation had

5

pornographic pictures of oral sexual acts, including females performing oral sex, saved on the hard drive.

The victim's sister, A.V., testified that she was told by her mother that she wanted Defendant to move in because a psychiatrist recommended a strong male influence and a good male role model in their lives. Her mother chose Defendant because he had been a family friend for some time. A.V. stated that he was given authority, in some aspects, to discipline all of the children. They would have to ask him for permission to go somewhere. A.V. said that if she "broke the rules," she would be in trouble with Defendant. She testified that he had whipped her on one occasion, that she complied with his requests, and that she did what she was told because he was the adult.

Lieutenant Shane Fruge of the DeRidder Police Department assisted in the investigation of the alleged offenses. During Lieutenant Fruge's questioning of Defendant prior to his arrest, he corroborated the victim's mother's statement that he had come down from Shreveport to help care for the children.

Regarding Defendant's allegation that the State failed to prove that the acts occurred, we find that the victim's testimony is replete with evidence of sexual activity, including an attempt by Defendant to touch the victim's genitals, in addition to several acts of sexual activity which show that he caused the victim to touch his genitals. Further, the victim's trial testimony clearly supports the State's contention that Defendant had the specific intent to touch her genitals or to cause her to touch his genitals. The only contradictory evidence presented by Defendant was the testimony of Lieutenant Fruge wherein he summarized Defendant's statement given

6

prior to his arrest. According to Lieutenant Fruge, Defendant reported that the acts did not occur.

In *State v. Rideaux*, 05-446, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 488, 491, we quoted the following ruling in *State v. Roca*, 03-1076, pp. 11-12 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, *writ denied*, 04-0583 (La. 7/2/04), 877 So.2d 143, which stated:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. *State v. Stec*, 99-633, p. 4 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.

Thus, in the instant case, the testimony of the victim alone is sufficient to prove that the alleged acts occurred.

Additionally, the record clearly supports the contention that Defendant exercised supervision and control over the victim during his stay in her home. The victim, her sister, and her mother all testified that Defendant had the authority to discipline the children. The victim's mother and sister both stated that Defendant had been brought into the home by their mother to help discipline the children. Additionally, the victim's testimony indicates that the alleged acts occurred during the time Defendant was living in her home. As such, we conclude that the State sufficiently proved that the acts occurred and that they occurred during the period of time that Defendant exercised his authority and his position of control or supervision over the victim.

7

As to Defendant's allegation that the State failed to prove that the acts were committed to gratify the sexual desires of either party, he refers to the *Rideaux* decision. As noted in *Rideaux*, 916 So.2d at 497, "'Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused.' *State v. Harris*, 99-1288, p. 7 (La.App. 5 Cir. 1/24/01), 782 So.2d 1055, 1059, *writ denied*, 01-0485 (La.1/25/02), 806 So.2d 668; La.R.S. 14:10." In this case, the jury could have inferred from the circumstances and Defendant's actions that the acts were committed to gratify his sexual desires. Specifically, the victim testified that he taught her how to masturbate him and to perform oral sex on him, and that he had her perform these sexual acts repeatedly during his stay in her home. Additionally, there was no suggestion with regard to these specific sexual acts that they were related to the practice of the religion, Shamanism (if in fact such a religion exists), and thus, were intended for non-sexual gratification as suggested by Defendant.

Although the victim did not give specific details about each time she was instructed to perform these sexual acts, she did describe, in some detail, the first time she performed oral sex at Defendant's instruction, with the visual aid of pornography on the computer. As we have said, her testimony was corroborated by the fact that pornography was found on the hard drive of one the computers confiscated from the victim's home during the investigation. Considering all of the evidence, we find that the evidence was sufficient to prove that Defendant had the specific intent to gratify his sexual desires.

In conclusion, we hold that the evidence was sufficient to prove that Defendant attempted to molest the victim and that he molested her on a number of occasions. He clearly attempted to and committed a lewd or lascivious act upon the victim, a fourteen-year-old girl, with the intention of arousing or gratifying his sexual desires by the use of influence and by virtue of a position of control or supervision over her. Accordingly, this assignment of error is without merit.

**SENTENCING ERROR**

By this assignment of error, Defendant argues that the trial court failed to provide him with an opportunity to speak at sentencing and, subsequently, considered his silence as a factor in determining his sentences. He argues that the trial court pronounced his sentences at the beginning of the hearing and then set forth its reasons for imposing them. He complains he could not have known that the sentences were based on incorrect or improper information until after hearing the trial court's reasons, at which point an objection was too late, citing *State v. Greer*, 572 So.2d 1166 (La.App. 1 Cir. 1990). Thus, Defendant contends that the trial court denied him the opportunity to provide mitigating factors or to contest the validity of the factors noted by the trial court.

First, we note that Defendant was represented by counsel at sentencing and that Defendant did not raise any objections during the sentencing proceeding. The only objection made by him was to the length of the sentences at the conclusion of the hearing. At no time did Defendant exercise his right or express a desire to testify at his sentencing hearing, and there is no indication in the sentencing transcript that the trial court denied him the opportunity to take the stand or introduce other

9

evidence on his behalf.

In *Greer*, the defendant argued that the trial court erred when it refused to allow him to make a statement at the conclusion of the sentencing proceedings in order to present mitigating factors. At the beginning of his sentencing hearing, the defendant objected to the trial court's earlier denial of a motion to withdraw his guilty plea. After briefly explaining its reasons for doing so, the trial court discussed the difficulty in sentencing persons who have sexually abused children, making reference to the defendant's record and the facts of the offenses. The trial court then sentenced the defendant, making the presentence investigation report part of the record. At that point, the defendant moved for an appeal. At the conclusion of the proceedings, defense counsel informed the trial court that his client wished to make a statement. The trial court declined the defendant's request to speak and defense counsel objected.

On appeal, the first circuit observed the ruling in *State v. Telsee*, 388 So.2d 747 (La.1980), wherein the supreme court held that due process guarantees a defendant the right to rebut false information relied upon by the trial court in imposing sentence. Also, the court noted that if a defendant does not request the right to rebut information contained in the presentence investigation report, he has waived the opportunity to rebut the report, citing *State v. Washington*, 414 So.2d 313 (La.1982), and *State v. Tate*, 506 So.2d 546 (La.App. 1 Cir.), *writ denied*, 511 So.2d 1152 (La.1987).

The significant difference between *Greer* and the instant case is that Defendant never requested to speak at any time during the sentencing hearing. Thus,

10

the trial court never denied Defendant the opportunity to testify. While the trial court reversed the typical order of sentencing by pronouncing the sentence first and then setting forth its reasons for imposing them, Defendant was never denied the opportunity to take the stand. The record clearly reflects that he remained silent throughout the entire hearing.

Additionally, we find that Defendant's complaint that the trial court used his silence at trial as a factor in imposing sentence is misguided. In the trial court's attempt to identify factors in mitigation of Defendant's actions, it stated that it had no information from Defendant because he exercised his right to remain silent at trial. The trial court did not state that it considered his silence at trial as an aggravating factor. Accordingly, we conclude that the trial court's statement regarding Defendant's silence at trial was not a factor used by the trial court in imposing his sentences, but merely a reference to the lack of mitigating factors in the case. This assignment of error has no merit.

**MAXIMUM SENTENCE**

By this assignment of error, the Defendant argues that the sentence imposed for attempted molestation of a juvenile is illegal as it exceeds the maximum sentence provided by the statute in effect at the time the offense was committed. Pursuant to La.R.S. 14:81.2(C), at the time the offense was committed, the sentencing range for molestation of a juvenile was one to fifteen years, with or without hard labor. Thus, under La.R.S. 14:27(D)(3), the maximum possible sentence for attempted molestation of a juvenile was not more than seven and one-half years, one-half of the longest prison term prescribed for molestation of a juvenile. As such,

11

Defendant's ten year sentence exceeds the maximum sentence and is illegal. In that regard, rather than remand this case for resentencing, we reduce the sentence to the statutory maximum of seven and one-half years. We do this because remanding for resentencing in this instance seems meaningless and a waste of judicial assets. Defendant has already received maximum sentences in three other counts that are to run concurrent with this count, and by rendering the maximum sentence on those counts it is evident that the trial court would do the same on this count. Accordingly, the sentence is reduced to the maximum of seven and one-half years at hard labor, to run concurrent with the sentences in counts two, three, and four.

**EXCESSIVE SENTENCE**

In Defendant's assignments of error, numbers two and four, he argues that the trial court failed to properly consider the factors set forth in La.Code Crim.P. art. 894.1 in determining the appropriate sentences and that the maximum sentences are nothing more than a needless imposition of pain and suffering.

In *State v. Brandenburg*, 06-1158, p. 28 (La.App. 3 Cir. 2/7/07), 949 So.2d 625, 644, *writs denied*, 07-0538, 07-0614 (La. 10/26/07), 966 So.2d 571, 573, this court stated:

> The trial court has wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed constitutionally excessive absent a manifest abuse of discretion. *State v. Evans*, 97-504 (La.App. 3 Cir. 10/29/97); 702 So.2d 1148, *writ denied*, 97-2979 (La.4/3/98); 717 So.2d 231. This court, in *State v. Dubroc*, 99-730, p. 22 (La.App. 3 Cir. 12/15/99); 755 So.2d 297, 311, noted:
>
> > The relevant question on review of a sentence is whether the trial court abused its broad sentencing discretion and not whether

12

the sentence imposed may appear harsh or whether another sentence might be more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). To constitute an excessive sentence, this court must find the penalty imposed is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals; and, therefore, it is nothing more than needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96); 670 So.2d 713.

*State v. Boudreaux*, 00-1467, p. 12 (La.App. 3 Cir. 4/4/01), 782 So.2d 1194, 1201, *writ denied*, 01-1369 (La.3/28/02), 812 So.2d 645 (quoting *State v. Dubroc*, 99-730, p. 22 (La.App. 3 Cir. 12/15/99), 755 So.2d 297, 311). "As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169.

At the time the offenses were committed, a conviction for molestation of a juvenile, pursuant to La.R.S. 14:81.2(C), carried a maximum possible sentence of fifteen years, with or without hard labor, plus a maximum possible fine of $10,000.00. Pursuant to La.R.S. 14:80, felony carnal knowledge of a juvenile carried a maximum possible sentence of ten years, with or without hard labor, and a maximum possible fine of $5,000.00. Thus, Defendant received the maximum prison sentence for counts three and four. We note that the trial court did not impose a fine on any count. Lastly, the sentences for counts two, three, and four were ordered to run concurrently with each other, thus, Defendant's sentencing exposure was

13

significantly reduced.

In the trial court's reasons for ruling, it set forth the mitigating and aggravating factors considered in sentencing Defendant as follows:

I have imposed these sentences after considering the testimony heard in court during trial and after reviewing the record in this case, including the discovery provided by the State to your attorney during the course of trial preparation. As you elected to exercise your constitutional right to remain silent in this case, I have no information from you in mitigation of the circumstances which gave rise to your abuse of these two young children.

The report of criminal history from the Louisiana Division of Probation and Parole indicates at least one prior felony conviction and several misdemeanor convictions all related in some way to alcohol abuse. There is information about several out-of-state arrests, but disposition of most of these matters is not known.

I have concluded prison time is required in this case due to the seriousness of the offense, the nature of your relationship with the victims and the horrible breach of trust involved in your criminal actions. Our society teaches young children that there are certain safe havens in which they can stay free from harm. They are told to look to parents, relatives, teachers, ministers and police for safety in times of peril. They are conditioned by their innocence to be trusting and open with persons in these positions at times of threat or vulnerability. A child must be safe from harm in its own home. Your breach of this trust under the facts of this case has been horrible. Your betrayal of these two young people in your charge in this case using your quasi-parental status and in one instance manipulating the victim with non-traditional alleged religious practice and ritual border on evil.

Sexual abuse of children has serious psychological effects. Emotional damage from this abuse can have effects for a lifetime. This is one of the reasons that society considers this type of criminal activity with repugnance and mandates serious penalties for breach of the law. The penalties provided in the statute are a measure of society's recognition of the damage done to children by such behavior and the seriousness with which such breaches of trust must be viewed. These children have been permanently scarred emotionally by your deviousness. Even though they are in therapy, they remain suspicious, fearful and cynical of everything and everybody. They have closed themselves off from normal human contact.

14

. . . .

You have taken no responsibility for the emotional damage that you have caused this family and particularly these two children that were entrusted to your care and nurture. You have shown no remorse. Your denial is so complete that it appears to the Court that you are living in some alternate reality of your own creation.

In the view of the Court factors such as this make you more dangerous to society. This is one of the reasons why the Court was lead to the conclusion that a probated sentence was inappropriate in this case. The sentences imposed today are reasonable and just considering the totality and severity of the circumstances of this case. They are clearly not excessive. They protect society.

In Defendant's Motion to Reconsider Sentence, he complained that his sentence was based, in part, upon the trial court's frustration that he had not taken responsibility for the crimes, had not shown remorse for the actions he denied, and because he was "living in some alternate reality" of his own creation. Defendant also expressed that the trial court infringed upon his constitutional right by penalizing him for practicing a religion that it did not understand and/or acknowledge as a religion.

On appeal, he contends that the trial court's comments about his religious practices were misplaced, asserting that Shamanism was not on trial. Defendant maintains that the trial court's sentence should not be based upon his religious practices, and to do so would violate his equal protection rights guaranteed to him under the Fourteenth Amendment to the United States Constitution. As such, he concludes that the trial court's references were improper and prejudicial.

Defendant also complains that the trial court's conclusion that the girls were forever traumatized by his actions is not supported by the record, and thus, its reliance on same in support of the maximum sentences is misplaced. We note that this complaint, as well as several other factors that Defendant wishes this court to

15

consider on appeal, were not raised in his motion to reconsider his sentence. Pursuant to La.Code Crim.P. art. 881.1, Defendant's failure to include a specific ground in his motion to reconsider precludes him from urging same for the first time on appeal. Thus, Defendant's allegation regarding the trial court's consideration of the trauma sustained by the victims, as well as other factors not previously raised, are not properly before this court and will not be considered herein. *See State v. Grogan*, 00-1800 (La.App. 3 Cir. 5/2/01), 786 So.2d 862.

Considering the reasons set forth by the trial court, we find that the trial court complied with the requirements of Article 894.1 in sentencing Defendant. Additionally, although Defendant received the maximum jail time on each count, he received the benefit of concurrent sentences on the convictions in counts one, two, three, and four, and a fine was not imposed on any of the convictions. Due to the nature of the crimes committed on the juvenile victims and Defendant's prior criminal history, the total time of incarceration of twenty-five years, while on the high side, is not grossly disproportionate to the severity of the crimes as to shock our sense of justice. The sentence makes a measurable contribution to acceptable penal goals (the deterrence of sexual predators and the protection of society) and is not simply a needless imposition of pain and suffering. Further, Defendant committed serious sexual offenses and should be considered among the worst of offenders for which maximum sentences are permitted. Accordingly, Defendant's sentences on counts two, three, four, and five are affirmed.

## CONCLUSION

Defendant's convictions in count one and two are affirmed. His sentence

16

in count one is reduced to seven and one-half years at hard labor and shall run concurrent with his sentences in counts two, three, and four and rendered. The remaining sentences are affirmed.

**AFFIRMED IN PART; SENTENCE REDUCED; AND RENDERED IN COUNT ONE.**

17

STATE OF LOUISIANA

VERSUS

RANDALL C. CURTIS


**GENOVESE, J., concurs in part, dissents in part, and assigns the following reasons:**

I concur with the majority in affirming the trial court in all respects except for its reduction and rendering of sentence on the attempted molestation of a juvenile conviction in accordance with La.R.S. 14.81.2(C) and La.R.S. 14:27(D)(3) in effect at the time the offense was committed. Because the majority superimposes its judgment for that of the trial court as to sentencing on the attempted molestation of a juvenile charge, I must respectfully dissent.

In its opinion, the majority states, "[I]t is evident that the trial court would do the same thing on this count." Though that may indeed be the case, we cannot make that assumption. Generally, sentencing is the function of the trial court. Though an appellate court may correct an illegal sentence as set forth in La.Code Crim.P. art. 882, an appellate court may not correct an illegal sentence if that correction involves the exercising of sentencing discretion as in this case. The facts in this case require a remand for the trial court to perform that function. *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694.

At the time the offense was committed, between December 2004 and March 15, 2005, the sentence for molestation of a juvenile was one to fifteen years, with or without hard labor. Therefore, the maximum sentence for attempted molestation of

a juvenile would be seven and one-half years. The trial court sentenced the Defendant to one hundred twenty months (ten years) at hard labor, which is illegal because it exceeds the maximum sentence allowed by law. Seven and one-half years is not a mandatory sentence. Because there is discretion here, it is the trial court, not the appellate court, which should resentence the Defendant as it deems appropriate. Consequently, this court should not superimpose its sentence for that of the trial court. In my view, the illegal sentence rendered by the trial court on the attempted molestation charge must be vacated and the case remanded to the trial court for resentencing on that charge. I would affirm the trial court in all other respects.