Judgment rendered May 26, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,913-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

EPHRAIM WILSON                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 344577

Honorable Ramona Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Chad M. Ikerd

JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

EDWIN L. BLEWER, III
SAMUEL SCOTT CRICHTON
Assistant District Attorneys

* * * * *

Before GARRETT, STEPHENS, and THOMPSON, JJ.

**GARRETT, J.**

The defendant, Ephraim Wilson, was convicted by unanimous jury verdicts of one count of molestation of a juvenile under the age of 13 and one count of pornography involving juveniles under the age of 13. He was sentenced to serve 38 years at hard labor for the molestation conviction and 15 years at hard labor for the pornography conviction. Both sentences were ordered to be served without benefit of parole, probation, or suspension of sentence and the sentences were to be served consecutively. The defendant appealed his sentences as excessive and argued that they should have been imposed concurrently rather than consecutively. He claimed that the trial court violated his due process rights by not allowing him to speak at the sentencing hearing and the trial court failed to rule on his motion to reconsider sentence. For the following reasons, we affirm the convictions and sentences.

## FACTS

Wilson was 42 years old at the time of these offenses and had lived in California for 23 years. He worked at an airport and did volunteer work with a church youth group. His mother and other family members lived in Shreveport. SW, the victim of these offenses, was adopted as an infant by Wilson's biological mother. SW was 12 years old at the time these offenses occurred.[1]

In October 2016, Wilson flew to Shreveport to see his mother. He had not visited her in many years. Wilson stayed at a motel near the airport. On October 25, 2016, Wilson took SW to a movie at approximately 4 p.m.

---

[1] Pursuant to La. R.S. 46:1844(W), initials are used to protect the identity of the victim.

The family planned to meet at a restaurant for dinner at 6:30 p.m. According to SW, they sat in the back of the theater on the top row, away from people. SW said that Wilson put his hand up her skirt and touched her private parts. When she tried to leave, Wilson pushed her back into her seat. SW said they only stayed in the movie for 30 minutes. They left the theater and SW thought Wilson was taking her home. Instead, he took her to his motel room. SW said that when they arrived at the motel, Wilson removed his clothes and made her take off her clothes. He inserted his penis in her vagina, performed oral sex on her, and forced her to perform oral sex on him. She said at one point, Wilson hit her in the face and he pushed her head down to force her to have oral sex with him. SW reported that, during the course of the offenses, Wilson ejaculated twice. He used his cellphone to take nude photos of SW, including her genitals. Wilson told her he was doing her a favor and not to tell anyone. At the time of the offenses, SW was five feet tall and weighed 98 pounds. She described Wilson as much bigger than her and "heavy set." She denied ever telling Wilson that she was interested in sex.

Wilson received a phone call from family members wondering why they were late for dinner. Wilson and SW left the motel and met the family at a restaurant. When SW got home that night, she told her mother what Wilson had done to her. According to SW, her mother was upset, but did not call the police immediately. Her mother secured her panties in a plastic bag. When SW got to school the next day, she told a counselor about Wilson molesting her the day before. Police were called to the school.

That morning, SW's mother also called the police and reported the offenses. A police officer was sent to her residence. The mother gave the police the clothing that SW was wearing the day before.

SW was taken to a hospital where a sexual assault nurse examiner ("SANE") examined her and collected evidence in a personal evidence recovery kit ("PERK"). The nurse observed a thick white substance on the child's genitalia and a tear near the vagina, which was still bleeding. Some portions of the examination could not be completed because SW was in pain. Subsequent DNA laboratory analysis showed that the Y profile obtained from the underwear and shorts that SW wore to the movies was consistent with the Y profile obtained from Wilson. Several days later, SW was taken to Gingerbread House, a children's advocacy center, where a video-recorded forensic interview was conducted and she detailed the offenses that Wilson committed against her.

Wilson was scheduled to fly back to California the afternoon of October 26, 2016, the day the offenses were reported and the day after they were committed. Officers from the Shreveport Police Department apprehended him at the airport. Wilson was informed of his *Miranda* rights. He waived those rights and gave a recorded statement to the police. He also consented to giving a DNA sample. A search warrant was obtained for his cellphone, but Wilson gave the police the password to the phone.

Wilson told police that SW was his adopted sister, but he was unsure of her name. He only knew her family nicknames. He acknowledged taking her to the movies the day before. At first, he denied any sexual contact with SW. He later admitted having sex with her, but said it was consensual. He claimed that SW "came onto" him. He admitted taking the child to his motel

3

room and having oral sex with her "for a couple of seconds." Wilson provided the police with the password for his cellphone and nude photographs of SW, including her genitals, were found on the phone. Wilson said, "My purpose was to show her how to get herself off."

Wilson was arrested and was initially charged by grand jury indictment with one count each of first degree rape of a victim under the age of 13, sexual battery of a victim under the age of 13, indecent behavior with juveniles under the age of 13, and pornography involving juveniles under the age of 13.

On January 22, 2020, an amended indictment was filed changing the charges to one count of molestation of a juvenile under the age of 13, a violation of La. R.S. 14:81.2, and one count of pornography involving juveniles under the age of 13, a violation of La. R.S. 14:81.1. Wilson was tried before a 12-person jury over a four-day period in January 2020. In addition to SW's testimony, the jury heard testimony from her mother, the police officers who investigated the offenses, the SANE nurse who examined SW, and the analyst from the North Louisiana Crime Lab who tested the DNA samples and clothing submitted. The forensic interviewer from Gingerbread House who interviewed SW shortly after the offenses testified and the recording of SW's interview was played for the jury. Wilson's statement to police was also played for the jury. During the course of the trial, SW revealed that her mother and other family members pressured her to recant her allegations against Wilson.

Wilson was convicted as charged on both counts by a unanimous jury. Wilson and the state filed sentencing statements and Wilson filed a supplemental statement with the trial court before sentencing. The sentences

4

set forth above were imposed on March 10, 2020.  A motion to reconsider his sentences was timely filed on March 17, 2020.  The motion was denied by the trial court on June 26, 2020.  Wilson appealed.

## MOTION TO RECONSIDER SENTENCE

Wilson claims as "error patent" that the trial court failed to rule on his timely filed motion to reconsider sentence.  He argues that the case should be remanded to the trial court for a hearing on the motion and that he should be allowed to refile an appeal.  This argument is without merit.

### Legal Principles

The trial court may deny a motion to reconsider sentence without a hearing.  La. C. Cr. P. art. 881.1 provides in part:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
>
> C. *If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.*
>
> D. *The trial court may deny a motion to reconsider sentence without a hearing*, but may not grant a motion to reconsider without a contradictory hearing.  If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion[.]  [Emphasis supplied.]

*See also State v. Williams*, 46,468 (La. App. 2 Cir. 9/21/11), 72 So. 3d 966.

The appeal of a criminal case does not divest the trial court of jurisdiction to rule on a motion to reconsider sentence. La. C. Cr. P. art. 916(3) provides:

> The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. *Thereafter, the trial court has no jurisdiction* to take any action *except* as otherwise provided by law and *to*:
>
> (3) *Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence*. [Emphasis supplied.]

The absence of a ruling on the motion to reconsider sentence does not affect the appellate court's ability to consider the constitutional excessiveness of the sentence on appeal, nor does it require a remand, since the trial court retains jurisdiction to rule on the motion to reconsider sentence and the defendant is within his rights to provoke same. Should the trial court later rule upon the defendant's motion to reconsider sentence, the defendant may seek appellate review of that decision pursuant to La. C. Cr. P. art. 914(B)(2). *State v. Samuels*, 52,640 (La. App. 2 Cir. 8/14/19), 277 So. 3d 925, *writ denied*, 19-01641 (La. 1/14/20), 291 So. 3d 681; *State v. Lewis*, 51,735 (La. App. 2 Cir. 1/31/18), 245 So. 3d 363; *State v. Larkins*, 51,540 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1220, *writ denied*, 17-1900 (La. 9/28/18), 253 So. 3d 154; *State v. Jackson*, 46,963 (La. App. 2 Cir. 2/29/12), 87 So. 3d 174; *State v. Egan*, 44,879 (La. App. 2 Cir. 12/9/09), 26 So. 3d 938; *State v. Lathan*, 41,855 (La. App. 2 Cir. 2/28/07), 953 So. 2d 890, *writ denied*, 07-0805 (La. 3/28/08), 978 So. 2d 297.

## Discussion

At Wilson's sentencing on March 10, 2020, he objected to his sentences in open court and a written motion to reconsider the sentences was

filed on March 17, 2020. The trial court signed an order on the motion to reconsider on April 15, 2020, but did not indicate whether the motion was granted or denied. The order of appeal was also signed by the trial court on that date. The record contains another order, signed by the trial court on June 26, 2020, denying the motion to reconsider the sentences. The minutes reflect that this order was filed into the record on June 29, 2020.

Wilson argued in brief that the motion to reconsider sentences had not been ruled on and consideration of his excessive sentence claim would be premature because the present sentence might be vacated by the trial court. He stated in his appellate brief that the record does not include the transcripts of a motion to reconsider hearing and the minutes indicate only that such a motion was filed, but not that a ruling was ever made by the trial court.

The record, the statutes, and the jurisprudence simply fail to support this argument. Wilson timely filed a motion to reconsider the sentences and the trial court was not required to hold a hearing before denying the motion. La. C. Cr. P. art. 881.1. Wilson is simply incorrect in stating that a motion to reconsider was filed, but not ruled upon. Contrary to Wilson's assertion, the trial court did, in fact, sign an order denying the motion on June 26, 2020, and the order was filed into the record on June 29, 2020. The entry of the trial court order denying the motion after the order of appeal was entered was valid because the trial court retained jurisdiction to rule on the motion. La. C. Cr. P. art. 916. Even if the trial court had not ruled on the motion, according to the jurisprudence, this court would not be compelled to remand the case for a hearing on the motion, as urged by Wilson.

## FAILURE TO ALLOW THE DEFENDANT TO SPEAK AT THE SENTENCING HEARING

Wilson argues that the trial court violated his due process rights by failing to allow him to speak at the sentencing hearing. He urges that the sentences should be vacated and the matter remanded for a new hearing. This argument is without merit.

### Legal Principles

The defendant must be given an opportunity to rebut or explain misinformation upon which the trial court relies or to which it is exposed in its sentencing decision. *State v. Ray*, 423 So. 2d 1116 (La. 1982); *State v. Cox*, 369 So. 2d 118 (La. 1979). The jurisprudence also holds that the accused must likewise be given an opportunity to make a showing, by argument of counsel or otherwise, of mitigating factors under La. C. Cr. P. art. 894.1(B), which the trial court may have overlooked. *See State v. Cox*, *supra*. The opportunity to do so is waived if not asserted before sentence is passed. *State v. Cox*, *supra*; *State v. Hughes*, 587 So. 2d 31 (La. App. 2 Cir. 1991), *writ denied*, 590 So. 2d 1197 (La. 1992); *State v. Buie*, 477 So. 2d 157 (La. App. 1 Cir. 1985). Moreover, error in denying the defendant this opportunity is harmless if there is no proof that the sentencing information was materially and prejudicially false. *State v. Washington*, 414 So. 2d 313 (La. 1982); *State v. Hughes*, *supra*.

The court does not have the affirmative duty to ask whether the defendant has anything to say at a sentencing hearing. *State v. Hughes*, *supra*. Comment (c) to La. C. Cr. P. art. 871 provides:

> The common law requirement of an allocutus, or an opportunity to respond to a question posed by the court as to why sentence should not be imposed, emanated from the fact that the defendant was without counsel and therefore deserved an

8

opportunity to object to irregularities in the proceedings which resulted in his conviction. The basis for the rule has largely disappeared with the advent of counsel and fully stated procedures for motions for a new trial and in arrest of judgment. Louisiana jurisprudence, prior to the 1928 Code of Criminal Procedure, had held that an opportunity for a pre-sentence statement by the defendant was required only in capital cases and was limited to the purpose of allowing the defendant to make motions for a new trial and in arrest of judgment. *State v. Ikenor*, 107 La. 480, 32 So. 74 (1902); *State v. Cheney*, *Man. Unrep. Cas*. 394 (La. 1880). The 1928 Code of Criminal Procedure provided for the defendant's right to counsel, and set out the procedures for making motions to set aside the conviction. The opportunity for the defendant to speak before imposition of sentence was no longer important, and Art. 524 of the 1928 Code specifically provided that it was not necessary to ask the defendant, "Have you anything to say why sentence of the court should not be pronounced against you?" The article did not prohibit the trial judge from allowing the defendant to make a pre-sentence statement. It denied the defendant a right to make a statement. The omission from this Code of the provisions of Art. 524 of the 1928 Code does not mean a return to the common law allocutus, for Art. 3 provides that where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the statutory law. The allowance of a pre-sentence statement remains in the discretion of the trial judge.

*See also State v. Brown*, 440 So. 2d 994 (La. App. 3 Cir. 1983), *writ denied*, 444 So. 2d 120 (La. 1984); *State v. Curtis*, 2008-99 (La. App. 3 Cir. 6/5/08), 987 So. 2d 294.

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor. La. C. Cr. P. art. 841. A new basis for an objection cannot be raised for the first time on appeal. *State v. Rutledge*, 34,834 (La. App. 2 Cir. 6/20/01), 792 So. 2d 31.

9

**Discussion**

The trial court did not order a presentence investigation ("PSI") in this case. La. C. Cr. P. art. 875 provides, in pertinent part, that if a defendant is convicted of a felony offense, the court *may* order the Department of Public Safety, division of probation and parole, to make a PSI. *See also* La. R.S. 15:1132. However, such an investigation is not mandatory. *State v. Hall*, 42,767 (La. App. 2 Cir. 11/21/07), 969 So. 2d 827. Such an investigation is more in the nature of an aid to the court, and not a right of the accused. *State v. Houston*, 50,126 (La. App. 2 Cir. 11/18/15), 181 So. 3d 188; *State v. Jackson*, 48,534 (La. App. 2 Cir. 1/15/14), 130 So. 3d 993; *State v. Valadez*, 52,162 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1273. Instead of ordering a PSI, prior to sentencing, the trial court allowed Wilson and the state to file sentencing statements which the court considered before imposing sentence. On appeal, Wilson argues that he was denied an opportunity to speak at sentencing and it was unclear whether he was denied an opportunity to rebut or offer mitigation to information considered by the trial court in sentencing. He argues that the record was insufficient to determine whether the trial court erred in considering the state's sentencing statement without giving Wilson the opportunity to review and offer explanations or counterclaims about the content of the statements. He contends that the trial court imposed the sentences immediately after the sentencing hearing commenced and the court's haste in pronouncing sentence precluded a full and fair sentencing hearing. These arguments are not supported by the record or the law.

The record shows that Wilson was given an opportunity to rebut or offer mitigation to information used by the trial court in sentencing. His

10

sentencing statement set forth the factors that Wilson wanted the court to consider in pronouncing sentence. The state filed a sentencing statement setting forth the factors it considered pertinent to sentencing. The state certified that a copy of the statement was forwarded to defense counsel on February 28, 2020. At that point, Wilson had an opportunity to review and rebut the information submitted by the state. Wilson filed a supplemental sentencing statement on March 6, 2020, submitting a letter concerning his participation in a correspondence course Bible study. Wilson did not claim that any of the information put forth by the state was incorrect or materially and prejudicially false.[2] These statements were filed with the trial court prior to Wilson's sentencing on March 10, 2020.

Wilson was not denied the right to speak at the sentencing hearing. A defendant does not have a right to speak at sentencing. Allowing a defendant to address the court is within the trial court's discretion. In this case, Wilson did not ask to speak regarding his sentence, and the defense did not offer a contemporaneous objection urging that the trial court failed to allow Wilson to address the court. After the sentence was imposed, Wilson indicated that he did not understand the sex offender registration requirements. A discussion was held off the record. The trial court did not deny Wilson the opportunity to address the court at sentencing and any perceived error in this regard was not preserved for appellate review.

Contrary to Wilson's argument, the trial court did not conduct the hearing in haste. Wilson was given an opportunity to rebut or correct information considered in sentencing and to offer mitigating factors. He was

---

[2] The sentencing statements will be addressed more fully below.

11

not denied an opportunity to address the court at sentencing. Wilson was given a full and fair sentencing hearing and his due process rights were not denied.

## EXCESSIVE SENTENCES

Wilson was ordered to serve 38 years at hard labor for the molestation conviction and 15 years at hard labor for the pornography conviction. Both sentences were ordered to be served without benefit of parole, probation, or suspension of sentence and the sentences were to be served consecutively. Wilson argues that his sentences, totaling 53 years, are constitutionally and statutorily excessive. He also contends that the trial court erred in ordering the sentences to be served consecutively. These arguments are without merit.

### Legal Principles

The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Egan*, *supra*. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Valadez*, *supra*. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not

12

been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, *supra*; *State v. Lee*, 53,461 (La. App. 2 Cir. 4/22/20), 293 So. 3d 1270, *writ denied*, 20-00582 (La. 10/14/20), 302 So. 3d 1113.

The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Davis*, 52,453 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1194.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Bell*, *supra*.

A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. Valadez*, *supra*. On review, an appellate court does not determine

13

whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*; *State v. Tubbs*, 52,417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied*, 20-00307 (La. 7/31/20), 300 So. 3d 404.

The sentence for molestation of juveniles under the age of 13 is set forth in La. R.S. 14:81.2 (D)(1), which provides:

> Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

The sentence for pornography involving juveniles under the age of 13 is contained in La. R.S. 14:81.1(E)(1)(a) and (5)(a), which provide:

> E. (1)(a) Whoever intentionally possesses pornography involving juveniles shall be fined not more than fifty thousand dollars and shall be imprisoned at hard labor for not less than five years or more than twenty years, without benefit of parole, probation, or suspension of sentence.

> (5)(a) Whoever commits the crime of pornography involving juveniles punishable by the provisions of Paragraph (1), (2), or (3) of this Subsection when the victim is under the age of thirteen years and the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than one-half the longest term nor more than twice the longest term of imprisonment provided in Paragraph (1), (2), and (3) of this Subsection. The sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 states:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

14

Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. *State v. Davis*, *supra*; *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. The failure to articulate specific reasons for consecutive sentences does not require remand, however, if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212. *See also State v. Williams*, *supra*.

**Discussion**

Even though no PSI report was ordered, Wilson and the state each filed sentencing statements with the trial court before the sentencing hearing, which the trial court used in formulating the sentences. In Wilson's sentencing statement, he informed the court that he was 45 years old at the time of sentencing and had no prior convictions. He had led a law-abiding

15

life for a substantial period of time before these offenses. He acknowledged that, before and during the trial, mutual family members pressured SW to recant her testimony against him, but he claimed that he neither contributed to nor participated in the harassment of SW. Defense counsel contended that these offenses were committed as part of the same act or transaction and argued that the sentences should be imposed concurrently "unless the court deems otherwise." Counsel requested "as much mercy as possible for the defendant, given the facts and circumstances of this case."

In the state's sentencing statement, it noted that the sentencing range for molestation of a juvenile under the age of 13 is 25-99 years at hard labor, with at least 25 years served without benefits. The sentencing range for pornography involving juveniles under the age of 13 is 10-40 years at hard labor without benefits. The state urged that the sentences be imposed consecutively, noting that SW, who was 12 when the offenses occurred, will face continuing trauma and emotional effects from each of these crimes. The state argued that concurrent sentences would diminish the seriousness of the offenses. According to the state, Wilson should not be treated with leniency because he committed multiple sex offenses involving the same victim and he should not get a pass on their mutual family members pressuring SW not to testify. The state argued that Wilson's acts isolated SW by turning the natural mother and siblings of the defendant against SW; the victim has no other place to live other than the home of Wilson's mother. The state said that the unanimous jury had deep concerns for the welfare of the victim. The state urged that severe consecutive sentences were warranted due to Wilson's lack of remorse. The state noted that Wilson tried to blame the offenses on SW, but this was negated by the Gingerbread

16

House interview.  The state contended that Wilson had already been shown sufficient mercy by the state proceeding with the molestation charge and not prosecuting him for first degree rape, making him eligible for a sentence to a specific number of years with the possibility of release rather than receiving a life sentence.  According to the state, it was disturbing that Wilson had been working with youth at a church in California prior to visiting Louisiana.

Wilson filed a supplemental sentencing statement attaching a copy of a letter from "Paige E." of Crossroads Prison Ministries, a correspondence course Bible study, along with a copy of Wilson's transcript showing his progress in the program.

Wilson appeared before the trial court for sentencing on March 10, 2020.  The court noted that Wilson had been convicted of molestation of a juvenile under the age of 13 and pornography involving juveniles under the age of 13.  The court said it had reviewed the sentencing guidelines of La. C. Cr. P. art. 894.1, and stated, "This court looks particularly to the fact that the defendant is in need of correctional treatment based on the facts of both charges for which he's been convicted by a unanimous jury."  The court found that any lesser sentences than those imposed would deprecate the seriousness of the offenses.  The court said it had reviewed the sentencing statements filed by Wilson and the state, as well as the letter attached to Wilson's supplemental statement.  The court then ordered Wilson to serve the sentences referenced above.  The court said that it was granting the state's request that the sentences run consecutively with each other "for the reasons urged by the State."  Wilson was ordered to register as a sex offender for life as to both convictions, to complete a sex offender

17

counseling program, and to have no contact with the victim. He was properly informed of the time limits for appealing and for applying for post conviction relief. He was given credit for time served. The defense orally objected to the sentences, particularly to ordering that the sentences be served consecutively, and later filed a written motion to reconsider sentence.

Wilson argues that the trial court did not specify which factors under La. C. Cr. P. art. 894.1 it considered, other than a lesser sentence than those imposed would deprecate the seriousness of the offenses. Wilson urges that the trial court did not specify what mitigating factors, if any, it considered. He contends that the trial court erred in imposing consecutive sentences here because the offenses were part of the same scheme. He maintains that the trial court erred in adopting the state's reasons for imposing consecutive sentences, it provided insufficient reasons for imposing consecutive sentences, and it abused its discretion in ordering that the sentences be served consecutively.

The record shows that the trial court considered the factors set forth in La. C. Cr. P. art. 894.1 and it considered the sentencing statements of both Wilson and the state. The statements, combined with the record in this case, provide an ample basis for the sentences imposed and the trial court's order that the sentences be served consecutively.

In accordance with the sentencing guidelines of La. C. Cr. P. art. 894.1, and the aggravating factors listed therein, the record demonstrates that Wilson's offenses manifested deliberate cruelty to the victim and the victim was particularly vulnerable due to her youth. Wilson used his status as SW's adopted brother to facilitate the commission of the offenses. Wilson also used violence in the commission of the offenses, both at the movie

18

theater and at the motel. He pushed the victim down in her seat at the theater to prevent her from leaving. SW testified that in the motel room, at one point, Wilson hit her in the face and pushed her head down to force her to engage in oral sex with him. In addition to forcing SW to engage in oral sex with him, he penetrated her vaginally, resulting in a vaginal wound that was still bleeding when the child reported the offenses the next day. Wilson threatened SW not to tell anyone what had happened. The record does not support Wilson's argument that the victim induced or facilitated the commission of these offenses. As a mitigating factor, the trial court was also aware that Wilson had no prior convictions.

The record shows an adequate factual basis for the sentences imposed. Also, the sentences are not constitutionally excessive. They are not out of proportion to the seriousness of the offenses and do not purposely and needlessly inflict pain and suffering. The sentences do not shock the sense of justice.

The factors enumerated by the state and relied upon by the trial court provide the particular justification for the court's decision to order that the sentences be served consecutively. The young victim was assaulted in a movie theater and later at a motel. The ordeal culminated in Wilson taking degrading photographs of the victim's genitalia. The state noted Wilson's lack of remorse for the offenses and his attempts to blame SW for them. The offenses resulted in physical and emotional trauma to the victim. Wilson's actions created a situation whereby SW was alienated from her family. The state urged that Wilson should not be treated with leniency because he committed multiple sex offenses with the same victim and that concurrent sentences would diminish the seriousness of the offenses.

19

Wilson originally faced a charge of first degree rape under La. R.S. 14:42, which carries a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He received a significant benefit in being tried for molestation of a juvenile under the age of 13. The sentences imposed by the trial court were in the middle range for the offenses in this case. Given the physical and emotional harm done to the victim, the damage done to the family relationships caused by these offenses, Wilson's lack of remorse, and his attempt to blame the victim for his commission of these heinous offenses, the sentences are not excessive and the trial court did not err or abuse its discretion in ordering that the sentences be served consecutively.

## CONCLUSION

For the reasons stated above, the convictions and sentences of the defendant, Ephraim Wilson, are affirmed.

**AFFIRMED**.